United States District Court
Southern District of Texas
**ENTERED**
August 01, 2022
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

ATI RESTORATION, LLC,                         §
                                              §
        *Plaintiff,*                          §
                                              §
VS.                                           §    CIVIL ACTION NO. 4:22-CV-00872
                                              §
FRANK C. CSERNIK and ROADRUNNER               §
RESTORATION COMPANY, LLC,                     §
                                              §
        *Defendants.*                         §

## MEMORANDUM OPINION AND ORDER

Plaintiff ATI Restoration, LLC ("Plaintiff" or "ATI") filed an Application for Preliminary Injunction (Doc. No. 1).[1] Defendants Frank C. Csernik ("Csernik") and Roadrunner Restoration Company, LLC ("Roadrunner") (collectively, "Defendants") filed a response in opposition (Doc. No. 19). Plaintiff filed a reply (Doc. No. 20).

The Court granted an agreed temporary restraining order on an emergency basis (Doc. No. 7) and then heard argument and received evidence at a preliminary injunction hearing on June 7, 2022. After careful consideration, the Court **GRANTS in part** and **DENIES in part** Plaintiff's application for a preliminary injunction.

### I.      Background

A. Factual Background

This is a case about whether Defendant Csernik violated certain post-employment restrictive covenants he entered into with his former employer, Plaintiff ATI, when he left in December 2021 to work for his new and current employer, Defendant Roadrunner. Most of the

---

[1] ATI filed its application for a preliminary injunction as part of its complaint, which was styled in full "Plaintiff's Original Verified Complaint and Application for Temporary Restraining Order, Preliminary Injunction, and Permanent Injunction." (Doc. No. 1, at 1). This order is limited to whether a preliminary injunction should issue.

facts are not in dispute, and the following factual background is not in dispute except where otherwise noted.

ATI is a nationwide disaster recovery services firm, headquartered in California, which operates in multiple branch offices in Texas and other states. Some of the projects that ATI restores include houses, hotels, strip malls, and other commercial buildings. Roadrunner is a direct competitor of ATI, headquartered in Houston and operating in Texas.

Prior to his departure from ATI, Csernik was four-and-a-half years into his Houston-based position as Regional Manager for ATI. In this role, Csernik oversaw ATI's operations in South Texas, and he supervised the company's project managers, salespersons, and administrative staff. As Regional Manager, Csernik's reported directly to Nancy Kirk, Regional Vice President for ATI. In 2021, Csernik signed two agreements. At the heart of the present dispute is whether, and to what extent, the second agreement superseded the first.

First, on February 19, 2021, Csernik signed an Incentive Unit Award Agreement (the "February Agreement") (Doc. No. 19, Ex. 4). This February Agreement contains covenants relating to the use of confidential information and the solicitation of employees and customers. The February Agreement also contains a non-competition clause, which reads, in pertinent part:

> (e)     During the Recipient's [Csernik] Employment and the Restricted Period, the Recipient will not, directly or indirectly, whether as owner, partner, investor, consultant, agent, employee, co-venturer or otherwise, engage in or compete with the businesses of the Company [ATI] or any of its Affiliates as conducted or in active planning to be conducted at any time during the Recipient's Employment (the "Restricted Business"), in (i) the State of Arizona, (ii) the State of California, (iii) the Southwestern Region of the United States, (iv) the Pacific Region of the United States, (v) the United States, or (vi) any geographic area where the Company or any of its Affiliates does business or is actively planning to do business at any time during the Recipient's Employment.

(Doc. No. 19, Ex. 4, § 4(e)). The "Restrictive Period" is defined as the "the twenty-four (24)-month period immediately following the termination of the Recipient's Employment, regardless of the reason therefore . . . ." (*Id.* § 4(c)).

Second, on November 11, 2021, Csernik signed the Employee Confidentiality, Non-Disclosure, Non-Solicitation and Inventions Assignment Agreement (the "November Agreement") (Doc. No. 19, Ex. 1). This November Agreement contains covenants similar to those found in the February Agreement. However, the November Agreement does not contain a post-employment non-competition clause.

Crucially—and the primary object of dispute between the parties at the injunction hearing—the November Agreement further contains a merger clause, which reads in pertinent part:

> 28.   **Entire Agreement.** This is the entire agreement between the Company [ATI] and Employee [Csernik] regarding the secrecy, use and disclosure of the Company's Trade Secrets and Confidential Information *and this Agreement supersedes any and all prior agreements regarding these issues. No other agreement, statement, or promise as to any matter addressed in this Agreement shall be binding or valid.*

(Doc. No. 19, Ex. 1, at ¶ 28) (emphasis added). As the Court will discuss below, Defendants aver that the November Agreement's merger clause renders the February Agreement legally inoperative, including the non-competition clause found therein.

In October 2021, while he was still employed by ATI, Csernik began discussing the possibility of employment at Roadrunner with Samir Bendriss ("Bendriss"), an officer of Roadrunner. As part of these discussions, Csernik forwarded the November Agreement to Bendriss. Csernik testified that he forwarded this agreement to Roadrunner in order to determine whether it was "safe" for him to leave ATI and work for a competitor. Ultimately concluding that the November Agreement had, in the areas of primary concern, superseded the February Agreement (and the covenants contained therein), Csernik decided to leave ATI for Roadrunner.

On December 2, 2021, Csernik tendered his resignation letter to ATI. The letter contained no mention of Csernik's intentions to work for a competitor of ATI.

Plaintiff alleges, and Defendants dispute, that immediately prior to departing ATI, Csernik accessed and copied confidential information from his ATI computer by means of a portable USB device in an effort to use such information in his new role at Roadrunner. Specifically, Plaintiffs allege that Csernik misappropriated "confidential information regarding the full list of vendors used by ATI" and various other confidential and valuable files. (Doc. No. 1, at ¶ 37). Defendants' position is that the only ATI documents found on the device were a copy of a non-confidential, template "Master Subcontract Agreement" ("MSA") and a publicly available pay application that Csernik accessed to assist ATI, at ATI's request. (Doc. No. 19, at 8); *see also* (Doc. No. 19, Ex. 2) (MSA).

Csernik subsequently began employment with Roadrunner as its Chief Operative Officer. In this capacity, Csernik serves as a coleader of Roadrunner—he, along with the Chief Financial Officer, reports directly to Roadrunner's board of directors. There is no Chief Executive Officer at Roadrunner.

B. <u>Procedural Background</u>

ATI filed suit against Defendants, bringing various causes of action against Defendants Csernik and Roadrunner independently. (Doc. No. 1). As against Csernik, ATI seeks damages and injunctive relief for (i) breach of contract; (ii) misappropriation of trade secrets in violation of the Defend Trade Secrets Act, 18 U.S.C. §§ 1831, et seq.; (iii) violation of the Texas Theft Liability Act, TEX. CIV. PRAC. & REM. CODE §§ 134.001, et seq.; (iv) violation of the Texas Harmful Act by Computer Act, TEX. CIV. PRAC. & REM. CODE §§ 143.001, et seq.; (v) unjust enrichment; (vi) conversion; (vii) breach of duty of loyalty; and (viii) breach of fiduciary duty. (*Id.* at 9–15).

As against Roadrunner, ATI seeks damages and injunctive relief for (ix) tortious interference with existing contractual relations. (*Id.* at 16).

Prior to the preliminary injunction hearing, the parties agreed to the terms of an Agreed Temporary Restraining Order, which the Court entered (Doc. No. 7) and subsequently extended at the parties' request, until such time and date as the Court rules on Plaintiff's Application for a Preliminary Injunction (Doc. No. 10). The Court held its preliminary injunction hearing and took the matter under advisement. The Court resolves the matter as follows.

## II.      Legal Standard

A preliminary injunction is an "extraordinary remedy" that should be granted only if the movant has "clearly carried the burden of persuasion" on all elements. *Lake Charles Diesel, Inc. v. Gen. Motors Corp.*, 328 F.3d 192, 196 (5th Cir. 2003). The movant, however, "need not prove his case." *Lakedreams v. Taylor*, 932 F.2d 1103, 1109 (5th Cir. 1991) (citing *H & W Indus. v. Formosa Plastics Corp.*, 860 F.2d 172, 179 (5th Cir. 1988)). Before a court will grant a preliminary injunction, the movant must clearly show:

> (1) a substantial likelihood that they will prevail on the merits, (2) a substantial threat that they will suffer irreparable injury if the injunction is not granted, (3) that their substantial injury outweighs the threatened harm to the party whom they seek to enjoin, and (4) granting the preliminary injunction will not disserve the public interest.

*City of El Cenizo v. Texas*, 890 F.3d 164, 176 (5th Cir. 2018) (quoting *Tex. Med. Providers Performing Abortion Servs. v. Lakey*, 667 F.3d 570, 574 (5th Cir. 2012)); *see also Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 20 (2008) ("A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest."). "The purpose of a preliminary injunction is always to prevent irreparable

injury so as to preserve the court's ability to render a meaningful decision on the merits." *Canal Auth. of Fla. v. Callaway*, 489 F.2d 567, 576 (5th Cir. 1974).

### III.    Analysis

The issue is whether this Court should order an injunction and, if it does, the breadth of such injunction. The elements required as a basis for an injunction in this Circuit are well established. The movant must prove (1) he is likely to succeed in the lawsuit, (2) irreparable injury, (3) the threatened injury outweighs any damage the injunction might cause the defendant, and (4) the injunction will not disserve the public interest. *Jackson Women's Health Org. v. Currier*, 760 F.3d 448, 452 (5th Cir. 2014).

"To satisfy the first element of likelihood of success on the merits, [a plaintiff's] evidence in the preliminary injunction proceeding 'is not required to prove [his] entitlement to summary judgment.'" *Janey v. Alguire*, 647 F.3d 585, 595–96 (5th Cir. 2011). Plaintiff asks this Court to enjoin Defendants (i) from using any confidential and proprietary information belonging to ATI; and (ii) from competing with the business of ATI, subject to the "reasonableness" limitations set forth in § 15.50(a) of the Texas Business and Commerce Code.

At the injunction hearing, Defendants stated that they were unopposed to the Court's entry of an injunction prohibiting Defendants from using ATI's confidential and proprietary information. So, to that extent, Plaintiff's Application for a Preliminary Injunction is **GRANTED in part**. It remains to be determined whether the Court should enjoin Csernik from competing with the business of ATI.

Plaintiffs seek an injunction against Csernik from competing with the business of ATI on the basis that the non-compete provision contained in the February Agreement is enforceable. *See* (Doc. No. 20, at 11–15). Defendants claim that the November Agreement superseded the February

Agreement, thus rendering the February Agreement "legally nonexistent" because the November Agreement contains the above-quoted merger clause. (Doc. No. 19, at 9). To determine whether the February Agreement's non-compete provision was superseded by the November Agreement, it is necessary for the Court to determine the scope of the November Agreement's merger clause.

The February Agreement contained the following four post-employment restrictive covenants in § 4, entitled "Restrictive Covenants." First, a non-disclosure provision:

> (a) . . . The Recipient agrees that, during the Recipient's Employment and thereafter, the Recipient will not, directly or indirectly, use or disclose to any Person, other than as required by applicable law or as required in connection with the Recipient's Employment, any Confidential Information obtained by the Recipient incident to the Recipient's Employment or other relationship with the Company or any of its Affiliates . . . .

(Doc. No. 19, Ex. 4, § 4(a)). Second, a non-recruiting provision:

> (c)      During the Recipient's Employment and the Restricted Period, the Recipient will not, and will not assist any other Person to, hire or engage any employee or independent contractor of the Company or any of its Affiliates who is such at the time of such hiring or engagement, or has been such at any time within the twelve (12)-month period immediately preceding such hiring or engagement. During the Recipient's Employment and the Restricted Period, the Recipient will not, and will not assist any other Person to, directly or indirectly, solicit for hiring or engagement any employee or independent contractor of the Company or any of its Affiliates who is such at the time of such solicitation, or has been such at any time within the twelve (12)-month period immediately preceding such solicitation, seek to persuade any such employee to discontinue or diminish his, her or its employment engagement with the Company or any of its Affiliates.

(*Id.* § 4(c)). Third, a non-solicitation provision:

> (d)      During the Recipient's Employment and the Restricted Period, the Recipient will not, directly or indirectly, (i) solicit or encourage any Person who is a client, independent contractor or other business partner of the Company or any of its Affiliates at the time of such solicitation or encouragement, or has been such at any time within the twelve (12)-month period immediately preceding such solicitation or encouragement, to terminate or diminish its, his or her relationship with the Company or any of its Affiliates, or (ii) seek to persuade any such client, independent contractor or other business partner to conduct with anyone else any business or activity which such business partner conducts or could reasonably be expected to conduct with the Company or any of its Affiliates;

(*Id.* § 4(d)). And fourth, a non-compete provision:

> (e)     During the Recipient's Employment and the Restricted Period, the
> Recipient will not, directly or indirectly, whether as owner, partner, investor,
> consultant, agent, employee, co-venturer or otherwise, engage in or compete with
> the businesses of the Company or any of its Affiliates as conducted or in active
> planning to be conducted at any time during the Recipient's Employment (the
> "Restricted Business"), in (i) the State of Arizona, (ii) the State of California, (iii)
> the Southwestern Region of the United States, (iv) the Pacific Region of the United
> States, (v) the United States, or (vi) any geographic area where the Company or any
> of its Affiliates does business or is actively planning to do business at any time
> during the Recipient's Employment.

(*Id.* § 4(e)).

It is this last provision, the non-compete, which Plaintiff seeks to enforce against

Defendants in the form of a preliminary injunction.

In contrast to the covenants in the February Agreement, the covenants in November

Agreement restricting Csernik's post-employment activities consist solely of a non-disclosure

provision (Doc. No. 19, Ex. 1, ¶¶ 6(a)–(c), 7), a non-recruiting provision (*id.* ¶ 10), and a non-

solicitation provision (*id.* ¶¶ 6(d), 9(a)–(f)). Although the November Agreement contains a

"Covenant Not to Compete *During* Term of Employment," (*id.* ¶ 8) (emphasis added), there is no

such non-compete restriction on Csernik's *post*-employment activity.[2]

---

[2] Paragraph 8 of the November Agreement reads, in full:

> 8.     **Covenant Not to Compete During Term of Employment**. Employee promises
> that, during Employee's employment with the Company, Employee shall not, directly or indirectly,
> (a) engage or attempt to engage in any competitive activity relating to the subject matter of
> Employee's employment with the Company or the Company's line of business, (b) engage or
> attempt to engage in any business or other activity conducted in any city, county, state, region,
> country or other jurisdiction in which the Company currently conducts, solicits, or markets any
> business or has developed plans to expand to such areas in the reasonably foreseeable future that is
> or may be competitive with the Company in any "Products and/or Services" (defined as any products
> and/or services that are competitive with those offered or provided by the Company to its clients,
> including products or services that are the same as or substantially similar to those offered or
> provided by the Company), (c) render services to any firm or business organization which competes
> or which plans to compete with the Company in any Products and/or Services, (d) entice or induce
> any client, customer, vendor, consultant, contractor, subcontractor or employee of the Company to
> become a client, customer, vendor, consultant, contractor, subcontractor or employee of any other
> person, firm or corporation with respect to any Products and/or Services, or to cease doing business
> with the Company, or contact or approach any such person, firm or corporation for such purpose or

The key question is whether the November Agreement can be read to address Csernik's post-employment activity because, if it can, then "[n]o other agreement, statement, or promise as to any matter addressed in this Agreement shall be binding or valid." (*Id.* ¶ 28).

"A 'merger clause' is a contractual provision to the effect that the written terms of the contract may not be varied by prior agreements because all such agreements have been merged into the written document." *San Antonio Props., L.P. v. PSRA Invs., Inc.*, 255 S.W.3d 255, 260 (Tex. App.—San Antonio 2008, pet. granted, judgm't vacated w.r.m.). Under the merger doctrine, one contract may be extinguished through its absorption into a subsequent agreement between the parties. *See Smith v. Smith*, 794 S.W.2d 823, 827–28 (Tex. App.—Dallas 1990, writ withdrawn) (citing *Caranas v. Jones*, 437 S.W.2d 905, 910 (Tex. App.—Dallas 1969, writ ref'd n.r.e.)); *accord GXG, Inc. v. Texacal Oil & Gas*, 977 S.W.2d 403, 415 (Tex. App.—Corpus Christi–Edinburg 1998, pet. denied); *Fish v. Tandy Corp.*, 948 S.W.2d 886, 898–99 (Tex. App.—Fort Worth 1997, writ denied). Whether the prior contract is extinguished is "largely a matter of the intention of the parties" as expressed in the relevant contracts. *Smith*, 794 S.W.2d at 827–28; *see also Fish*, 948 S.W.2d at 898–99 ("[B]efore one contract is merged into another, the last contract must be between the same parties as the first, must embrace the same subject matter, and must have been so intended by the parties.").

The language of the November Agreement's merger clause expresses the Plaintiff's and Csernik's intention to supersede the February Agreement "as to any matter addressed" in the November Agreement. (Doc. No. 19, Ex. 1, ¶ 28). The November Agreement clearly addresses

---

(e) authorize or knowingly approve the taking of any of the foregoing actions by any other person. Employee understands that Employee remains free to moonlight or work anywhere else during Employee's employment with the Company so long as such work does not result in a breach of this Section and does not conflict with or inhibit Employee's ability to perform Employee's work for the Company.

(Doc. No. 19, Ex. 1, ¶ 8).

Csernik's ability to engage in employment in competition with ATI. For example, paragraph 8 of the November Agreement restricts Csernik's ability to compete with the business of ATI during his employment ATI. (*Id.* ¶ 8). Therefore, Csernik's ability to compete against ATI was a "matter addressed" in the November Agreement. As such, any clause touching the matter of competitive employment—including the non-compete provision found in the February Agreement—was superseded by the November Agreement and the operation of its merger clause.

Plaintiff argues that the non-compete in the November Agreement is essentially, as counsel put it, an "anti-moonlighting" provision, and as such it addresses a topic completely different from the February Agreement's post-employment non-compete. *See* (Doc. No. 20, at 12). Plaintiff's argument, however, misses the mark because Defendants' contention that the merger clause language supersedes all prior agreements "as to any matter addressed in this Agreement" is equally plausible. (Doc. No. 19, Ex. 1, ¶ 28). Both the "anti-moonlighting" provision of the November Agreement as well as the post-employment non-compete provision of the February Agreement address the matter of Csernik's ability to compete with ATI. As a result, ATI "must bear responsibility for [its] own failure to include new . . . non-compete clauses or to incorporate by prior reference the contract as an exception to the clear merger clause" in the November Agreement. *See R. Ready Prods., Inc. v. Cantrell*, 85 F. Supp. 2d 672, 694 (S.D. Tex. 2000).

Moreover, the merger clause contained in the February Agreement demonstrates that Plaintiff knew how to avoid superseding any prior-agreed restrictive covenants binding Csernik:

> 11.   Entire Agreement. This Agreement and Plan constitute the entire agreement between the parties, and supersedes all prior agreements and understandings, relating to the subject matter of this Agreement; *provided, however, that the restrictive covenants contained in this Agreement are in addition to, and do not supersede, any restrictive covenants by which the Recipient is bound under any other agreement between the Recipient and the Company or any of its Affiliates.*

(Doc. No. 19, Ex. 4, § 11) (emphasis added). Despite this knowledge, the language of the November Agreement's merger clause demonstrates that Plaintiff chose not to except any prior covenants from being superseded.

As a result of the foregoing analysis, the Court cannot conclude that ATI's breach-of-contract claim based on the non-compete provision in the February Agreement is likely to succeed on the merits. With Defendants' equally plausible interpretation of the scope of the November Agreement's merger clause and questions of fact remaining as to the parties' intent, ATI has not met its burden of demonstrating a substantial likelihood of success on the merits of its claim. *See Terex Corp. v. Cubex Ltd.*, No. 3:06-CV-1639-G, 2006 WL 3542706, at *2 (N.D. Tex. Dec. 7, 2006); *see also Nerium SkinCare, Inc. v. Nerium Int'l, LLC*, No. 3:16-CV-1217-B, 2017 WL 10152284, at *5 (N.D. Tex. Nov. 13, 2017) (holding that plaintiff failed to establish likelihood of success on contract claim where parties presented "equally plausible" arguments on the merits), *report and recommendation adopted* (N.D. Tex. Dec. 8, 2017).[3] Therefore, the Court **DENIES in part** Plaintiff's Application for Preliminary Injunction as to this issue.[4]

---

[3] "The Fifth Circuit has deemed the first element to be sine qua non, meaning there is no need to proceed to the other elements if a substantial likelihood of success on the merits cannot be proven." *Anderson v. Morris*, No. 4:16-CV-101-DMB-JMV, 2017 WL 9565838, at *1 (N.D. Miss. Apr. 28, 2017) (citing *Walgreen Co. v. Hood*, 275 F.3d 475, 477 (5th Cir. 2001)), *report and recommendation adopted*, 2017 WL 4284541 (N.D. Miss. Sept. 27, 2017), *aff'd*, 755 F. App'x 415 (5th Cir. 2019). Nonetheless, the Court also concludes that, even if Plaintiff were to show a likelihood of success on the merits, a preliminary injunction might not be appropriate because Plaintiff did not adduce evidence at the injunction hearing regarding the harm ATI would face absent the injunction.

[4] To the extent that Plaintiff seeks a preliminary injunction against Defendants prohibiting them from soliciting former clients of ATI, the Court declines to base an injunction on the nonsolicitation clause of the February Agreement for the same reasons it declines to base an injunction on the non-compete clause of the February Agreement—namely, the nonsolicitation clause was superseded by operation of the November Agreement's merger clause.

Notwithstanding the foregoing, the Court sees no reason why the nonsolicitation clause of the November Agreement—the enforcement of which ATI did not plead as a basis for its application for injunctive relief—would not bar the Defendants from soliciting former clients of ATI. At this time, however, the Court will abstain from ruling on that issue because it was not argued and has not been briefed.

### IV. Conclusion

For the reasons discussed above, the Court **GRANTS in part** and **DENIES in part** Plaintiff's Application for a preliminary injunction. The precise terms of terms of the injunction will issue under a separate order which the Court shall issue forthwith.

Signed at Houston, Texas, this __1st__ day of August, 2022.

                                          Andrew S. Hanen
                                          United States District Judge